WASHINGTON COUNTY.

STATE *vs.* TOWN COUNCIL OF SOUTH KINGSTOWN.

The Supreme Court has power to issue *mandamus* to a town council requiring it to call according to statute an elective meeting to elect a senator and representatives to the State legislature.

This power is not affected by the constitutional provision that each house of the legislature "shall be the judge of the elections and qualifications of its members."

To interpret statutes and to declare what the law is, is a judicial power.

Neither house of the legislature can by itself make or authoritatively interpret the law as a rule for others.

A general statute does not repeal a special statute unless the purpose to do so is clear.

Hence Pub. Laws R. I. cap. 923, of March 26, 1891, does not repeal Pub. Laws R. I. cap. 710, § 18, of March 22, 1888.

Pub. Laws R. I. cap. 710, § 18, of March 22, 1888, is constitutional. *In re the Narragansett Election,* 16 R. I. 761, affirmed.

Pub. Laws R. I. cap. 710, § 18, of March 22, 1888, requires, in case no election is made, another elective meeting to be held within ten days.

*Held,* that this provision as to time is directory not mandatory. *In re the Census Superintendent,* 15 R. I. 614, affirmed.

PETITION for a writ of *Mandamus.* On demurrer to the petition.

This petition preferred by the Attorney General sets forth that an elective meeting to choose a senator and representatives from the town of South Kingstown to the General Assembly of the State was holden on the first Wednesday in April, 1893, and failed to elect, no person voted for having a majority of the vote cast ; that pursuant to Pub. Laws R. I. cap. 710, § 18, of March 22, 1888, the town council ordered a new election to be holden April 14, 1893, which duly took place and also resulted in a failure to elect ; that the town council thereafter neglected and refused to order another election and thereby violated its statutory duty. The petition was filed asking for a writ of *mandamus* to compel the town council to order a new election. The respondents demurred.

Pub. Statutes R. I. cap. 10, § 18, provides :

"SEC. 18. In cities other than the city of Providence, and in towns divided into voting districts, ward and district meetings held therein respectively for the election of senator and representatives, and of members of the town council, or of any one or more of them, shall, at the time of closing the polls therein prescribed by law, stand adjourned to the third day next from and after the day so appointed, unless the said third day shall fall on Sunday or on a holiday, and in that event, to the Monday, or the day following said holiday, with like adjournment therefrom, but no adjournment or adjournments shall exceed seven days from the first meeting."

Pub. Laws R. I. cap. 710, §§ 17, 18, of March 22, 1888, incorporating the District of Narragansett in South Kingstown, R. I., provide :

"SEC. 17. The town council of South Kingstown shall proceed within two days next after the election to count the ballots in the same manner as is prescribed in section 14 of Chapter 10, of the Public Statutes for the counting of ballots by the moderators and clerks of town and ward meetings and shall forthwith declare the result.

"SEC. 18. If no election shall have been made of senator and representative in the general assembly or of either of them upon the day appointed by law for any election, the said town council shall order a new election to be held not more than ten days from the first election and so on until the election shall be completed."

Pub. Laws R. I. cap. 923, of March 26, 1891, is as follows :

"AN ACT IN AMENDMENT OF CHAPTER 10 OF THE PUBLIC STATUTES.

"*It is enacted by the General Assembly as follows :*

"SECTION 1. Section 18 of chapter 10 of the Public Statutes is so amended as to read as follows :

'SEC. 18. In cities other than the city of Providence, and in towns divided into voting districts, ward and district meetings held therein respectively for election of senator and representatives, and of members of the town council, or of

any one or more of them, shall, at the time of closing the polls therein prescribed by law, stand adjourned to the third day next from and after the day so appointed, unless the said third day shall fall on Sunday, or on a holiday, and in that event, to the Monday, or the day following said holiday, with like adjournment therefrom : *Provided,* however, that in Hopkinton there shall be no election held on Saturday, and if the third day fall on Saturday the meeting shall stand adjourned to the Monday following, being five days from and after the day so appointed, with like adjournment therefrom, but no adjournment or adjournments shall exceed seven days from the first meeting.'

"SEC. 2. All acts or parts of acts inconsistent herewith are hereby repealed, and this act shall take effect from and after its passage."

The matter came on for hearing before Matteson, C. J., Stiness and Douglas, JJ.

*Providence, April* 22, 1893. PER CURIAM. The court is of the opinion that it has no jurisdiction to grant the writ prayed for, since the Constitution Art. IV. § 6, provides that " Each house (of the General Assembly) shall be the judge of the elections and qualifications of its members." Should the court, by its writ require the town council to fix a day for a new election beyond the ten days specified in Pub. Laws R. I. cap. 710, § 18, of March 22, 1888, thereby impliedly holding that a new election so held would be legal and binding, and an election of senator and representative should then be made, the senate and house of representatives being under the provisions of the Constitution quoted judges of the *elections* and qualifications of their respective members, might, nevertheless, determine that such election was void and thereby render the action of the court nugatory. The court is therefore of the opinion that it is for the General Assembly to provide a remedy for the failure of the town council to. call an election for senator and representative within the period limited, and not for the court. *Weeden* v. *Town Council of Richmond,* 9 R. I. 128, 131.

The petitioner then filed a petition for a reargument of the

question of jurisdiction. This petition was heard by the full court of six justices, and its decision was given by Douglas, J.

*Providence, May* 3, 1893. DOUGLAS, J. The question of jurisdiction lies at the threshold of this proceeding and requires careful consideration.

The Constitution secures to the electors of the several towns the right to choose annually their senators and representatives in the General Assembly. When the attempt to elect at the annual election meeting is unsuccessful the Constitution, where its provisions are applicable, or the statutes, where it is silent, provide for adjournments of the election within certain limits.

It is alleged that the statute relating to South Kingstown provides for successive elections until a result is reached. The town council refuse to call a new election, and the first ground taken in opposition to this application is that if it is their duty to call such election this court has no jurisdiction to ascertain and enforce that duty. This contention is based upon the fact that each house of the General Assembly is the judge of the elections and qualifications of its members ; and it is argued that as the legality or illegality of the holding of the election itself may be a controlling issue in deciding upon the *status* of a person claiming to be elected and so become an issue which the house in which he claims membership can alone decide, this court is precluded from any examination or decision of that question.

It seems to us that this reasoning is fallacious and involves assumptions which are subversive of the established distinctions between the several branches of the government.

In the first place it assumes that the decision of either house in the General Assembly, acting under this power, has the effect of declaring the law. This is clearly not so, for the senate may seat a senator and the house of representatives may refuse to seat a member-elect to that house, both coming with similar credentials from the same election ; and the senate may specify as the ground of their action that the election was lawfully held and the house may justify their action on the ground that the election was not lawfully held.

Under the Constitution the action of each house with respect to the person claiming to be .elected, is valid and final ; but none of the steps by which that action was reached and none of the reasons assigned by either house, though they were spread by resolution upon its records, would have any force as declaring the law beyond the case then decided.   Neither house of the legislature by itself can either make or authoritatively interpret the law as a rule for others.   The making of the law under the Constitution requires the concurrent vote of both houses and the declaration or authoritative interpretation of the law so as to form a precedent for subsequent cases, is for the courts.   " To declare what the law is or has been is a judicial power ; to declare what it shall be is legislative."   Cooley on Constit. Limit. 113.   The late Chief Justice Ames, in *Taylor* v. *Place*, 4 R. I. 324, says, p. 361 : " Neither the convention which framed the constitution, nor its members, nor the members of the general assembly, nor even the general assembly itself, can, *authoritatively* expound the Constitution, but only *the courts*."   Maxwell, J., in *State ex relat. Benton* v. *Elder*, 31 Neb. 169, says :   " But it is said that the legislature is a coördinate branch of the government and that it is entitled to construe the Constitution and statutes for itself, and therefore is not governed by the construction placed upon it by the Supreme Court.   That it is a very important coördinate branch of the government is true, and the Supreme Court has never, except when its action was invoked in some of the modes pointed out by the law, sought to construe statutes or constitutional provisions for the legislature.   It is the province of the legislature, however, to pass laws and of the courts to construe the Constitution and the laws. . . . . It is the duty of the court to carefully investigate every case brought before it, and after due consideration place what it believes to be a correct construction upon the language of any of the provisions of the Constitution or of the statutes ; and such construction binds every department of the government, including the legislature, and every person within the State.   The construction given by the Supreme Court becomes the standard

to be applied in all cases." And again, p. 717 : "The legislature is a lawful body elected and organized in pursuance of the Constitution and the laws for a lawful purpose ; and while within the limits and restrictions of the Constitution it may pass any measure it may deem proper, yet morally it is bound by the same considerations of fairness and justice which control the courts, and it is its duty to dispose of election contests in this manner."

It is doubtless in the power of either house of a future legislature, in its action upon election cases, to disregard equally the statutes and the decisions of the courts ; but we see no reason in the fact that this power exists why the legislature should refrain from making laws or the courts from interpreting them. Neither of the coördinate branches of the government can anticipate error in the other or assume that any other will act unlawfully ; particularly when the Constitution has afforded to the executive and legislative departments means of ascertaining the law when it is doubted and has not been declared by previous judicial decisions. Constitution of Rhode Island, Art. X, § 3.[1]

Again, it does not follow from the fact that one tribunal is the ultimate judge of a question when it arises in reference to a matter proper for its decision, that another tribunal may not entertain the same question independently when called upon to decide its own action or to compel the action of parties lawfully in its jurisdiction ; and the recurrence of the same question in both *fora* does not exclude from the jurisdiction of either tribunal a case normally within it.

Such cases are provided for and anticipated in the Constitution and in the statutes. For example : The Constitution provides, Art. XI, § 3, as follows : "The governor and all other executive and judicial officers shall be liable to impeachment; but judgment in such cases shall not extend further than to removal from office. The person convicted

---

[1] As follows : "The judges of the supreme court shall, in all trials, instruct the jury in the law. They shall also give their written opinion upon any question of law whenever requested by the governor, or by either house of the general assembly."

shall nevertheless be liable to indictment and punishment according to law."

In such proceedings, whether in the assembly or in the court, questions of construction of the law of the case must arise. The senate acting as a court to try the impeachment may construe the law and act in that proceeding upon such construction. The court trying the indictment may construe the same law and its construction may determine the result of the trial. Each tribunal acts independently of the other in its own sphere although in arriving at their several conclusions both may traverse in part the same ground.

The statutes also provide, Pub. Stat. R. I. cap. 238, §§ 4, 5, that for officiating as moderator, warden or clerk, or for allowing his name to be used as a candidate for any legislative office at an illegal election, a person shall be punished by fine and imprisonment, and such cases shall be tried by the Supreme Court.

In such a case the person elected may be rejected by the house and so the legislative body may disapprove the election, and the court in trying the officer or candidate may rule the election legal. Shall the court refuse to acquit a person charged with crime because one house of the General Assembly has construed the law differently from its meaning as ascertained by the court?

If we allow, therefore, to the senate in impeachment cases and to either house in election cases the fullest judicial power which the Constitution can be supposed to give them, these powers cannot be interpreted to interfere with the independent power of the court in cases properly before it, or to bind its action as precedents; and still less can such powers in the legislature be held to limit the powers or duties of the court when its action must precede the consideration of the question elsewhere.

The holding of an election which the law requires is a necessary prerequisite to bringing before the house the question of the seating of the claimant of the office. To refuse to order the election is to decide the question in advance and preclude the house from passing upon it at all. To order the

election is one step towards bringing the final question of the seating of the claimant before the ultimate tribunal which has the power to decide it.   If the people who have the right to elect are not secured in it by the action of the court they will have lost it irretrievably.

The cases, *People ex relat. Fuller* v. *Hilliard*, 29 Ill. 413, and *State ex relat. Benton* v. *Elder*, quoted above, are very persuasive upon this point.

Passing then the objection that the construction of the law may arise hereafter in another tribunal, the question is whether the case alleged is a proper one for the issue of a writ of *mandamus*.

One office of *mandamus* is to enforce obedience to statute law.   In general it lies to compel all officers to perform ministerial duties as well as to compel subordinate courts to perform judicial duties ; but not to compel the exercise of discretion in any particular way.   It is not contended that the duty of the town council in this matter is other than ministerial.   *Mandamus* is peculiarly the proper remedy when other specific remedies are wanting.   The remedy which a legislature can provide is to make a law applicable to the case.   When the law is made it is for the court to enforce it or to punish for disobedience of it.   In either function it must construe the statute, *i. e.* declare what it means.   In the present case if the law already made imposes a present duty no further legislation would make it more imperative. Any legislative act designed as a remedy must impose ministerial duties upon individuals.   The court must again be resorted to to compel such individuals to perform those duties. So that in the last analysis this remedy by *mandamus* is the only specific and efficient one, and if it is not afforded there are no other means which can give to the electors the opportunity to exercise such rights as the law gives them.

If the law has not provided for this case then the sole remedy is with the legislature, but if the legislature has already expressed its will in the form of law the sole specific remedy is in the court.   It seems incumbent, therefore, upon the court to examine the statute and see if it gives the right to

the electors which is claimed—not the right to have any particular person seated as a member of the legislature but the right by lawful methods to express their choice of candidates for that office.

It was suggested at the hearing that if the right were given by the statute in words which could not be misunderstood, *mandamus* would lie ; but that where the statute is not so plain as to exclude all debate as to its meaning, the court ought to refrain from construing it. We think this argument is self destructive. The reading of any sentence in a living language requires some exercise of judgment and a choice of interpretations. It is hardly possible to write an English sentence in which words will not occur which have different meanings ; and from these meanings the reader must select the one consistent with the subject and the context.

If the court find a meaning in the statute, that, to them and as controlling their action, is the meaning of the statute and the command of the law until it is repealed or amended. If the statute which is to be the rule of action of ministerial officers in important public duties presents difficulties of interpretation it is all the more desirable that its meaning should be ascertained and more plainly declared by the court.

These considerations lead us to reconsider the rescript which expressed the first impression of the court upon this branch of the case, and the petition will stand for argument upon the other questions involved.

STINESS, J., dissenting. I am unable to see that the court has jurisdiction of a petition like this. I do not doubt the authority of the court to issue a *mandamus* which involves only a plain ministerial duty, for, in such case, the court exercises an executive rather than a judicial function. But here the controlling question is whether, if an election is called as prayed, the persons chosen at such election will be legally elected ; for, unless this is so, clearly we have no right to command the calling of an election. The gist of the matter then is the legality of the election and this requires the exercise of a purely judicial function, namely, the con-

struction of chapters 710 and 923 of the Public Statutes. While this duty, in ordinary cases, is one which pertains exclusively to the court, a difficulty in this case, to my mind, arises from the fact that Art. IV, § 6, of the Constitution says : "Each house shall be the judge of the *elections* and qualifications of its members." In *People ex relat. Hatsel* v. *Hall*, 80 N. Y. 117, Folger, J., says : "It is conceded by the text writers, that each of those houses has the sole power to judge thereof, exclusive of every other tribunal :" citing numerous authorities, and the opinion holds that a gift of judicial power to one coördinate body, should be construed as reserving the particular power thus bestowed from the general conferment of judicial power, by the same instrument, upon another coördinate body. The judicial power thus reserved is general in its terms and embraces questions of law as well as of fact. *Peabody* v. *School Committee of Boston*, 115 Mass. 383 ; *People ex rel. Sherwood* v. *Bd. Canvassers*, 129 N. Y. 360, 375.

If this court decides that a member of the legislature may be legally elected, under our construction of the law, at the meeting we are asked to order, the house to which he is so elected may decide differently and our order for an election will be rendered futile. Of course the court, merely on account of such difference should not be deterred from performing a plain duty; for even the two houses of the assembly may differ between themselves as to the validity of the same election; but the possibility of such difference, with the ultimate and controlling power given to another body, seems to me to afford an appropriate test of the question of the jurisdiction of this court. The form of the proceeding is within the jurisdiction of the court; but we must look to the substance of the proceeding rather than to the form, and the substantial thing to be decided is the legality of the election. It is urged, however, that we do not decide the legality of the election, but simply declare the meaning of the law and require a ministerial duty to be performed accordingly. This seems to me to beg the whole question. It amounts to our holding that we have a jurisdiction because we take it, or to administering the

law as plain because we say it is plain; when, in fact, we have gone outside of the terms of the law and put a judicial construction upon it, which must of necessity declare in advance the legality of the election; while the other tribunal, to whom the constitution has exclusively confided this class of cases, may decide exactly the reverse. We are not asked to order a duty which is apparent upon an inspection of the law, but a duty which can only be arrived at by a judicial interpretation of the law. When the law says a thing shall be done in a certain way, the court may say to the inferior officer: "Do it." It is a straining of terms to say that this is an exercise of judicial functions. And this was all that was done in *People ex relat. Fuller* v. *Hilliard*, 29 Ill. 413, and *State* v. *Elder, ex relat. Benton*, 31 Neb. 169, cited by the petitioner, where a certificate was ordered to be given in one case and returns to be opened in the other, in order that the disputed question might be put before the house. The cases involved no prejudgment of the controversies. But here we must prejudge the validity of the election in order to be warranted in commanding it, and this, too, when we cannot enforce that judgment, nor make it binding upon anybody but the persons to whom our command is issued.

The Supreme Court of Pennsylvania *In re Contested Election of McNeill*, 111 Pa. St. 235, refused to entertain a writ of *certiorari* to review the conclusion of the Court of Common Pleas in a contested election for senator, remarking: "Were we to assume jurisdiction to review this advisory action of the Common Pleas, whether we agreed or disagreed with it, our conclusion would be of no binding obligation on the house." So in *Peabody* v. *School Committee of Boston*, *supra*, Gray, C. J., in speaking of a similar clause of the constitution of Massachusetts, said: "The only form in which the justices of this court can properly express any opinion upon that subject is under that clause of the Constitution which authorizes each branch of the legislature, as well as the governor and council, to require it upon important questions of law and upon solemn occasions." In *Mauran* v. *Smith*, 8 R. I. 192, this court refused to issue a *mandamus*

to the Governor of the State, and Durfee, J., said: "One reason which has been suggested for refusing the writ, is, that if granted, it would tend to provoke a conflict between the judicial and executive branches of the Government,—a conflict in which the judiciary would prove the weaker party. Of course, in a case where the jurisdiction is clear, such a consideration could have no weight; but where the jurisdiction is problematical, the consideration affords a presumption which it would be unwise to disregard. 'For,' as Blackstone has remarked, 'all jurisdiction implies superiority of power; authority to try would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court had power to command the execution of it.' 1 Shars. Bl. Com. 242." It is no answer to this reasoning to say that the court can enforce its *mandamus*, when the fundamental question on which that *mandamus* must depend is the legality of the election.

In the same line was *Weeden* v. *Town Council of Richmond*, 9 R. I. 128, where the court refused to express an opinion, under the assent of both sides, upon the ground that it had no jurisdiction to enforce it. The *mandamus* of course could have been enforced; but the decision of the real question involved having been committed to the town council the court would have no right to enforce it and consequently lacked jurisdiction of the whole matter. The case in this respect seems to me to be identical in principle with the case at bar. The most urgent and plausible reason in favor of the jurisdiction of the court is upon the consideration of consequences. It is urged that town councils by refusing to call a meeting, through ignorance or fraud, may deprive electors of their right to elect. This may be so. But it is a significant fact that in the numerous cases, with which the reports of all the States abound, in regard to calling elections, not one can be found where a court has interfered by *mandamus* to order an election for senators or representatives. This shows one of two things; either this class of cases has not been considered to be within the jurisdiction of the court; or else official fidelity to an express law has thus far been ad-

equate to secure the rights of the people.   If it be the former the inference is almost conclusive against jurisdiction; if it be the latter, the evil consequences, which have been conjectured, fade away and we may safely say that the machinery of the law, which has gone on without a break down to the quadri-centennial of the landing of Columbus, does not require the aid of the court by extraordinary remedy, and it may well be trusted for the future.   The safeguard of the public is to be found in the general loyalty and honesty of its own officials, and, in exceptional cases, in the penalties provided for a breach of duty.

As said in *People ex relat. Demarest* v. *Fairchild*, 67 N. Y. 334, a petition for *mandamus* against the attorney general:   "The attorney general may have erred in judgment, and for this there is no remedy.   If he had acted corruptly or from unworthy motives and the legal rights of the relator have been prejudiced this is not an appropriate remedy." And in *State of Missouri ex relat. Ensworth* v. *Albin*, 44 Mo. 346: "There is force in the observation of the petitioner's counsel that if the registration officers refuse to perform their duty injustice may be done, and a party may be deprived of what he is fairly entitled to.   But that would not justify a court in giving validity to a palpably illegal act, though the illegality occurred in consequence of the negligence, wilful default, or even corruption, of officers whose duty it was to perform a given function or execute a trust."

In the *Opinion of the Judges*, 10 Gray, 613, it is said: "If it shall be asked what shall be done if one of these apportionments and returns shall be discovered to be erroneous, one answer is that the Constitution has provided no power competent to inquire into and correct any such error. . . . . All public officers who are charged with the performance of public duties, and who may be guilty of fraudulent, wilful and corrupt conduct in the discharge of them, are liable to prosecution and punishment therefor by impeachment or indictment; but even punishment for their misdeeds may not necessarily correct them, though it may afford an additional security to the public against their perpetration."

It may also be said that unless the court sets the machinery in motion the question cannot be brought before the house for decision. But even this, to my mind, does not show that the court has jurisdiction. It is not the province of the court to compel the making of a moot case for another tribunal; nor to supply, in an exigency, a remedy which the law has not provided. The law may be so framed as to enable the court to enforce its plain terms; but the court cannot take this power to itself, by going outside of the constitutional limit to put a construction upon the law and then administering it as if it needed no construction. Hence the court was correct in its original rescript that we had no jurisdiction and that the remedy must be provided by law for the future, this instance being *casus omissus.*

These considerations result in the following propositions. The grant of judicial powers over elections, in the Constitution, to the two houses of the assembly is full, embracing law and fact, and is exclusive of all other jurisdiction. The process of the court may be invoked in execution of those requirements which are apparent on the face of the law; but not of such as can only be ascertained by a resort to interpretation of the law, because this is strictly a judicial power which is conferred upon the house and thus reserved from the jurisdiction of the court. When the main question to be determined is the legality of an election, to which the issuing of process by the court is simply incidental, the court invades the jurisdiction conferred upon another body in prejudging the question and this is made apparent by the fact that the court has no authority to enforce its real judgment, the ultimate power being given to the other body. Jurisdiction to try and determine and power to enforce go together. Honesty of purpose and penalties for default, instead of the process of the court, are the sufficient trust of the public, as shown by the fact that the court has never been called upon to act in such a case before.

For these reasons I am of the opinion that the court has no jurisdiction to pass upon the substantial question which is raised in this case.

The case was then, as to the other questions involved, heard by the Court on the demurrer.

*Providence, May* 12, 1893.   ROGERS, J.   The writ of *mandamus* prayed for is to compel the town council of South Kingstown to order a new election of senator and representative under the provisions of Pub. Laws R. I. cap. 710, § 18, of March 22, 1888.   That chapter was passed at the January Session, 1888, and is entitled "An act to incorporate the District of Narragansett, in South Kingstown, R. I."   As its title indicates it is a special statute, being applicable to the single town of South Kingstown, and at the time of its passage Pub. Stat. R. I. cap. 10, § 18, was in force, providing, *inter alia*, that in case of there being no election of senator and representatives in towns divided into voting districts, district meetings held therein for the election of senator and representatives, shall at the time of closing of the polls therein prescribed by law, stand adjourned to the third day next from and after the day so appointed, unless the third day fall on Sunday or a holiday, and in that event, to the Monday, or the day following said holiday, with like adjournment therefrom, but no adjournment or adjournments shall exceed seven days from the first meeting.

Chapter 710, § 18, provides that if no election shall have been made of senator and representative in the General Assembly, or of either of them, in South Kingstown, upon the day appointed by law for any election, the said town council shall order a new election to be held not more than ten days from the first election, and so on until the election shall be completed.   Chapter 710, § 18, then, excepted South Kingstown by special statute from the operation of Pub. Stat. R. I. cap. 10, § 18, and applied a different provision of law to that town.

April 30, 1890, the General Assembly, by chapter 885 of the Public Laws, divided the town of Hopkinton into voting districts, and in the following March, before a single general election had been held, it amended Pub. Stat. R. I. cap. 10, § 18, by Pub. Laws R. I. cap. 923, of March 26, 1891, for the especial benefit of Hopkinton by simply inserting therein the

words, "provided, however, that in Hopkinton there shall be no election held on Saturday, and if the third day fall on Saturday the meeting shall stand adjourned to the Monday following, being five days from and after the day so appointed." Chapter 923, § 2, was as follows: "All acts or parts of acts inconsistent herewith are hereby repealed, and this act shall take effect from and after its passage."

It is contended in behalf of the town council of South Kingstown that chapter 923, § 2, repealed chapter 710, § 18, because the latter is inconsistent with the former. It is a matter of common knowledge that there are many Seventh Day Baptists, so called, living in Hopkinton, who observe Saturday as their Sabbath, and as the election for general officers and for senator and representatives falls by statute on the first Wednesday in April, a three days adjournment therefrom would invariably fall on Saturday, a day on which the Seventh Day Baptists, from principle, perform no secular duties. Doubtless when chapter 885 was passed, dividing Hopkinton into voting districts, the three day provision of chapter 10 escaped attention and was not thought of until the next general election was approaching, when chapter 923 was passed for its benefit to remedy the difficulty.

Does chapter 923 repeal section 18 of chapter 710? We think not. The general rule of interpretation of statutes is that a general statute shall not repeal a special statute unless the purpose so to do is clearly manifest.. *City of Providence* v. *Union R. R. Co.*, 12 R. I. 473; *Verry* v. *School Committee*, 12 R. I. 578; *State* v. *Champlin*, 16 R. I. 453; *Tripp* v. *Torrey*, 17 R. I. 359. In the words of Chancellor Kent: "It is an established rule in the exposition of statutes, that the intention of the language is to be deduced from a view of the whole and of every part of a statute, taken and compared together. The real intention when accurately ascertained, will always prevail over the literal sense of terms. . . The great object of the maxims of interpretation is to discover the true intention of the law." 1 Kent Comment. 461, 468. To the same purport is the language of Chief Justice Durfee in *Dawley* v. *Probate Court*, 16 R. I. 696, viz.: "We

like always in construing a statute, to take the words literally, assuming that the General Assembly have chosen such as readily express their intent.   This cannot always be done, for it sometimes happens that words have been used that taken literally are inconsistent with the predominating purpose.   The cases are numerous in which the literal meaning of words and phrases has been restrained or extended by construction to suit the legislative intent."

In New Jersey the rule is laid down by Mr. Justice Magie in *Brown* v. *Mullica Township*, 48 N. J. Law, 447, 448, in this wise (omitting the names of numerous cases cited): "It has been well settled in this state that a general law on a subject matter, which has been provided for in certain localities by special law, will not, although it contain a general repeal of acts inconsistent with it, annul or alter the special provisions in those localities."   (Citing cases.)   "But if the general law expressly repeals the special laws, or shows by implication a manifest intent to supersede their provisions, the latter must yield."   (Citing cases.)   See also *Gurney* v. *Walsham*, 16 R. I. 698; *Dodge* v. *Walsham*, 16 R. I. 704; *Smith* v. *The People*, 47 N. Y. 330.

Is not the intention of the General Assembly in the statutes referred to, perfectly clear to every careful reader thereof?   By chapter 710, § 18, it meant to apply a different rule to South Kingstown from the one then applicable to other towns.   By chapter 923 it meant to make still another exception to chapter 10, § 18, in favor of Hopkinton, and to that end it simply amended said last mentioned section; the very first words of chapter 923 being, "Section 18 of chapter 10 of the Public Statutes is so amended as to read as follows," and then succeeds § 18 as amended, and in the next section is the repealing clause above referred to.

What effect has the repealing clause?   Clearly, it would seem that the old statute is repeated to show the context or proper position of the amendatory words as to Hopkinton, and for no other purpose.   Repeating the words of chapter 10, § 18, in chapter 923 gave them no greater force then they had before, unless, indeed, to render them applicable to an

exceptional case like South Kingstown; but inasmuch as by a special statute, viz., chapter 710, South Kingstown had been taken out of the operation of chapter 10, § 18, and the manifest purpose of chapter 923 was to remedy a defect as to Hopkinton, can there be any reasonable doubt that if the General Assembly had intended to withdraw the exception as to South Kingstown, it would in the repealing clause of chapter 923 have said, "Section 18 of chapter 710, and all acts and parts of acts inconsistent herewith are hereby repealed?" In our opinion the repealing clause of chapter 923 was intended to apply only to the amendatory provision of chapter 10, § 18, relating to the town of Hopkinton.

It may be urged that unless chapter 923, § 2, operated as a repeal of chapter 710, § 18, no effect could be given to the repealing clause of said chapter 923, since the first section of that chapter acted as a repeal by substitution of said chapter 10, § 18 and fully covered the provision as to Hopkinton. The force of this argument to our minds is neutralized by the fact that chapter 885, to the subject matter of which chapter 923 so manifestly relates, had been so recently enacted, and also by the fact that the two chapters are *in pari materia.* Applying the rule laid down in *Brown* v. *Mullica Township,* above referred to, although the general repeal clause of chapter 923 would be broad enough to include chapter 710, § 18, if intended to apply thereto, we fail in the case at bar to find a general law expressly repealing the special law or showing by implication a manifest intent to supersede its provisions. Otherwise than as applicable to the amendatory clause relating to Hopkinton we think the repealing clause of chapter 923 is to be regarded as merely redundant.

Having determined that section 18 of chapter 710 is not repealed by chapter 923, the next question to be considered is whether § 18 of chapter 710 is constitutional. We see no reason for deviating from the conclusion arrived at *In re the Narragansett Election,* 16 R. I. 761, and we are therefore of the opinion that § 18 of chapter 710 is constitutional.

Another question is, whether, ten days having elapsed since the last election for senator and representative in South

Kingstown, a new election can take place under chapter 710, § 18.    We are of the opinion that the provision as to time in said last mentioned section is not mandatory but is merely directory.    *People* v. *Allen*, 6 Wend. 486; *In re the Census Superintendent*, 15 R. I. 614.    The concluding words of the judges *In re the Census Superintendent*, it seems to us, are equally applicable to this case, viz: "We think that here, without doubt, the purpose was not to limit the power, but to insure its timely exercise."

*Demurrer overruled.*

A peremptory writ of *mandamus* was ordered to issue May 15, 1893, commanding the respondents to convene immediately on receipt of the writ and to call an elective meeting within ten days, return on the writ to be made on or before noon of May 17, 1893.

Return to the writ was made under date of May 16, 1893, stating that the town council had met and had ordered an elective meeting for May 25, 1893.