———————o———————

No. 3350.

(Court of Appeal, Parish of Orleans.)

SUCCESSION OF WILLIAM THOMAS.

1. Emancipation gives to the slave his Civil rights, and a contract of marriage, legal and valid by the consent of the master and moral assent of the slave, from the moment of freedom, al-

though dormant during slavery, produces all the effects which results from such contract among free persons.

2. The marriage which has been declared null nevertheless produces its Civil effects as it relates to the parties and their children; *provided* that it has been contracted in *good faith*.

3. Purchasers in good faith need not look beyond the order of sale made by a Court having jurisdiction of the Succession. They are not affected by antecedent irregularities; the jurisprudence on this point is settled.

Appeal from Civil District Court, Division B.

M. J. Cunningham, for Administrator.

F. Deibel, Jr., Geo. Montgomery, for Appellants.

A. Voorhies, for Appellee.

MOORE, J.   On the 21st of Jauuary, 1902, the public administrator for the City of New Orleans, caused the Succession of William Thomas, whom he alleged died on the 21st dav of July 1886, to be opened. He averred the Succession to be vacant; that deceased left no widow or heir present or represented and applied for letters of administration to be issued to him.

After due compliance with law, no opposition being filed, he was duly appointed and qualified as its administrator.

The sole property inventoried was a certain piece of real estate situated in the City of New Orleans and appraised at $300.

Within 30 days after the opening of the Succession the administrator applied for the sale of the property to pay debts, the debts being represented to be $201 and consisting of "City and State taxes unpaid about $51, claimed to have been heretofore paid $150." "Besides usual costs and charges," which sale was duly ordered, and took place on the 10th day of April, 1902.

Prior to the sale, however, Louis Thomas, John Thomas, Widow Louise Coulon, born Thomas, and Widow Celeste Thomas, the three first named claiming to be the children of the deceased, issue of the deceased's marriage with Celeste Thomas, who is the last named, filed their opposition alleging their relationship with the deceased William Thomas as stated; their acceptance of the Succession; the non-existence of debts; the absolute nullity of the appointment of an administrator, and the illegality of the order of sale, prayed the nullity of the appointment of the administrator, the recalling of the order of sale and the recognition of movers as the forced heirs of the deceased, William Thomas.

Pending this rule the property was adjudicated to Frank Wendling for $700.

Subsequently the administrator filed his exception to the form

125

of proceeding and reserving same, his answer in effect a general denial. On the 23rd day of October, 1902, the rule was dismissed and from that judgment no appeal has been taken.

On the 9th of May, 1902, the administrator filed his final account wherein he charges himself with the gross proceeds of sale $700, and credits himself $400, amount alleged to have been disbursed, leaving a balance of $300 for distribution to "heirs or the State in default of heirs."

Thereupon, the movers in the rule supra filed their opposition, reiterating all the averments of their supra, alleging the nullity of all proceedings subsequent to the filing of their former rule; that the sale having taken place subsequent to filing of their first rule praying for the nullity of the proceedings looking to the opening of the Succession and the appointment of an administrator it is an absolute nullity and should be disregarded as should also the final account filed; that "the debts and charges carried on said tableau are neither legal nor just nor equitable", and they pray that the said tableau and account be rejected and that each and every item of said claims be rejected.

Subsequently the adjudicatee, Wendling, sued out a rule on the Thomas heirs who were in possession of the premises, to show cause why the same should not be delivered to him. To this rule the exception as to the form of the proceeding was first urged, then for answer it is alleged that the Thomases were in open and peaceful possession of the property for the past 17 years having inherited same from their deceased father William Thomas, that the Succession of William Thomas was improperly opened, and here follows a repetition of all the allegations concerning the opening and administering of the Succession and sale of the property as previously urged by the Thomases; the prayer being that the rule be discharged and that Thomases be quieted in the possession of the property. The opposition of the Thomases to the account and the rule of Wendling were cumulated. In the meanwhile however, one Ambroise Burbank and one Euphemie Winter, widow of William Dorsey, opposed the account and claiming the balance for distribution on the ground that they are the nearest relations of one Elizabeth Winter, whom they allege is the lawful widow of William Thomas, who they aver died leaving no ascendants, descendants or collaterals.

The judgment of the Court was:

1st—That the rule filed April 2, 1902, by the Thomases be made absolute and the appointment of the public administrator as the administrator of the Succession of William Thomas be avoided and set aside.

2nd—That the order directing the sale of the real estate be set aside and annulled.

3rd—That the account of the administrator be annulled and rejected.

4th—That the opposition of Fred. Deibel, Jr., and Ambroise Burbank and Euphemie Winter be dismissed.

5th—That the rule taken by Frank Wendling be discharged and accordingly the Thomases be declared, respectively, the widow and heirs of William Thomas and be put in possession of the Succession and quieted in the possession of the real estate in dispute.

From this judgment the administrator, Ambroise Burbank and Mrs. William Dorsey appeal.

The facts are that William Thomas and Celeste Thomas were slaves belonging to different but neighboring owners. With the consent in the custom of slave marriages they were duly married.

Six children was the issue of that marriage.

During the Civil War, husband and wife were separated.

The master of the latter removing with her and her children to the State of Texas, the husband remaining in this State with his master. After the war Celeste returned to Louisiana and at once made search for her husband, he having then left the section of the State where they were married, the Parish of Lafourche. She found him living on Judge Ross' plantation, in the Parish of St. John; with him was living in open concubinage Elizabeth Winter. She had taken her children with her and they were present at the meeting of husband and wife after years of separation.

What took place then is best told in the simple language of one of the children who, testifying in the case said :

"Well, my mother came back; when she came back from Texas, she came back worrying as to where her husband was, and they told her. She had six little children there, and she worked to get enough money to look for her husband; she found her husband at Judge Ross' about twenty-five miles away. He was mixed up with another woman, and she didn't want to leave my father and she stayed to my father. My mother said this woman wont let you go, and I will have to go back to the Bayou. I will take three children and give you three. That was me, Alfred and Bill."

This woman was Elizabeth Winter. Celeste remained with her children and with her husband at Judge Ross' plantation and in her husband's home for about two days, then came the separation and division of the children.

On the 1st of October, 1870, William Thomas married Elizabeth Winter before a Justice of the Peace and on the 8th of October, 1872, purchased the property in question; his three sons residing with him. He died on the 15th day of July, 1886, leaving no ascendants or collaterals or descendants, save the children of his slave marriage. Three years subsequently Elizabeth died. Thomas' son Louis, remained in possession of the property holding it for himself, his mother and his brothers and sister, almost 17 years. Thomas' Succession was opened by the Public Administrator in 1902.

Elizabeth Winter died without issue, leaving no ascendants but a brother and sister, claimants as herein stated, *supra*. Under this state of facts the question that is presented and which we deem it

proper to dispose of at once, is who are the lawful heirs of William Thomas; the issue of Thomas slave marriage with Celeste, or the brother and sister of Elizabeth the latter inheriting to the exclusion of the State, and her brother and sister through her.

Under the Code of 1825, Art. 182, slaves could not marry without the consent of their masters. and their marriages did not produce any of the Civil effects which result from such contracts. This imports that slaves could marry with the consent of their masters, and it has long since been held that after emancipation of the parties, such a contract of marriage "legal and valid by the consent of the master and the moral assent of the slave, from the moment of freedom, although dormant during the slavery, produces all the effects which result from such contracts among free persons." Girod vs Lewis, 6 M. 559. "As to those who were slaves," said the Court in Succession of Pierce 35 A. 1168 "their own consent and that of their masters were alone sufficient to give to their marriages an undeniable validity, one which produced no effect as long as they were held in bondage, but which from their emancipation, has secured for them and their posterity the rights and privileges bestowed by the State on a marriage authorized and sanctioned by its laws."

To the same effect is Pierre vs Fontenette .25 A. 617. Ross vs Ross, 34 A. 860; and Succession of Hebert 33 A. 1107.

Here we have the undisputed proof that William and Celeste were married in the usual and customary manner of slave marriages with the consent of their respective masters and their own moral assent; that they lived together as man and wife during their bondage and that the wife became the mother of six children for her husband; that they were separated during the Civil War by their masters residing in different States; that after the war and subsequent to the General Emancipation Proclamation which freed them from bondage, the husband and wife were brought together again; the wife and her children remaining under the same roof with her husband for several days; the wife refusing to remain longer owing to the presence of her husband's concubine; the husband making no denial of the marriage nor repudiating same, but on the contrary receiving his wife under his roof as his wife, recognizing his children as his lawful offspring and subsequently consenting to a separation, each taking and caring for an equal number of the children. Under no precept of either law or justice, can Celeste now be considered as a concubine and her children as bastards. She is the widow and they are the heirs of William Thomas. It is contended by those who are claiming the Succession as the brother and sister of Elizabeth Winter that if it should be held that the marriage of Thomas and Celeste was a legal marriage that nevertheless Elizabeth and Thomas' subsequent marriage produced its civil effects and that her heirs are entitled to an equal share in the Succession with the legitimate children of Thomas the issue of his marriage with Celeste.

128

The Code (Art. 117) provides that the marriage which has been declared null nevertheless produces its civil effects as it relates to the parties and their children, but only in the event that it has been contracted in good faith. Succession of Taylor 39 A. 823; Monnier vs Coutejean 45 A. 420.

In the instant case both Elizabeth and Thomas were in bad faith for both knew of the former marriage and that Celeste was alive at the time when Thomas and Elizabeth undertook to become man and wife. No civil effect therefore results from that marriage.

Having now determined the status of the several claimants to the Succession and having found the Thomases to be the lawful heirs, it is now incumbent upon us to determine the other issues presented.

Much has been said in both oral and printed arguments on both sides concerning the regularity of the opening and administering of the Succession of Thomas; the order to sell the real property, its sale and the right of the Thomases to have been permitted to accept the Succession and to be sent into possession. These issues, it must be recalled, were presented *solely and only* by the intervention or rule sued out by them of date April 2nd, 1902, and that rule it must also be recalled was discharged by judgment of the 23rd of October, 1902; *and is not appealed from.* True it is, however, that subsequently and by way of opposition to the final account of the administrator all the allegations of their rule of the 2nd of April are repeated, but they are made merely as a recital of what had taken place and not as substantive allegations intended to constitute a cause of action. Pretermitting the question whether the legality or regularity of the appointment of an administrator to a Successsion; or the legality of an order of sale or the proper or improper ruling denying the right of heirs to accept a Succession and to be put into possession thereof after it is once decided and not appealed from, can be made the basis of inquiry on an opposition to a final account, nevertheless no such issues were tendered by the opposition, the prayer thereof being simply that, "the account be rejected and that each and every one of said claims be declared not due." Under such a prayer and as we say, pretermitting the many other valid objections which may be urged thereto, no judgment could be rendered, as was rendered decreeing the nullity of the entire proceedings including the appointment of the administrator the order to sell and the sale itself. In this particular the judgment appealed from is error.

There is, therefore, nothing left in the case but the question of the homologation of the administrator's account and the rule of the adjudicatee to be sent into possession of the property acquired by him at the Succession sale. Wendling, having purchased the property at public auction, its sale by the Succession represented having been duly authorized and having paid the price therefor is clearly entitled to the possession of the property now held by the Thomas widow and heirs. He is in no wise concerned with the

controversy between the Thomases and the administrator. He was a purchaser in good faith and need not look beyond the order of sale made by a court having jurisdiction of the Succession. No antecedent irregularities can affect him. The jurisprudence on this point is settled. 27 A. 599, 40 A. 761, 31 A. 52, 32 A. 337, 27 A. 559, 41 A. 990. He is therefore entitled to have his rule made absolute.

‘The final account having been duly proven should be homologated and as we have declared Celeste Thomas to be the widow in community of William Thomas, and Lewis Thomas, Alfred Thomas and Louisa Coulon, born Thomas, to be the legal heirs of William Thomas, they are entitled to receive in the proportion of one-half to the said widow, and one-third of one-half to each of said children, the balance of $300 in the hands of the administrator for distribution.

To make the decree comprehensive we will have to reverse the judgment appealed from and make it in accordance with the views herein expressed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be the same is hereby avoided, reversed and set aside and it is now ordered adjudged and decreed:

1st. That Celeste Thomas, widow of William Thomas, be declared the widow in community of said William Thomas, and that Lewis Thomas, Alfred Thomas and Louisa Coulon, born Thomas, be decreed to be the legal heirs of William Thomas, deceased, and as such they be entitled to receive in the proportion of one-half to the said widow, and one-third of one-half to each of said children. the balance or residue which appears on the final account of the administrator of said Succession for distribution to the heirs.

2nd. That the final account of the administrator of said Succession be, and the same is, hereby duly approved and homologated.

3rd. That the rule sued out by Frank Wendling to be put in possession of the property acquired by him at Succession sale made herein be maintained and he be sent into possession of same, and

4th. That the opposition of Ambrose Burbank and Euphemie Dorsey be, and the same are, hereby rejected at their costs; the costs of the lower Court to be paid by the Succession and those of this Court by the appellants.

March 7th, 1904.

Rehearing refused March 27, 1904.

Writ of certiorari and review granted by Supreme Court.